## GAFFORD v. THE AMERICAN MORTGAGE AND INVESTMENT COMPANY.

1.  **Evidence:** SECONDARY: FOUNDATION FOR: NOTICE TO PRODUCE PAPERS. Plaintiff gave defendant timely notice to produce on the trial the original record of the meeting of its directors on a given date, including the record of a certain resolution material to the case, and informing defendant that if the original record was not produced, parol evidence of its contents would be introduced at the trial. *Held* that this was sufficient foundation, upon a failure to produce the original, to justify the introduction of a copy of the record in question, which a witness, a former officer of defendant, and who showed that he was familiar with the original record of the resolution named in the notice, testified to be a true copy of it. (See *Greenough v. Shelden*, 9 Iowa, 506.)

2.  **Verdict:** EVIDENCE TO SUPPORT: ACCEPTANCE OF DRAFTS: SETTLEMENT. A railroad company of which plaintiff was president drew drafts on the defendant in favor of the plaintiff, which defendant accepted. In an action on the drafts, it appeared that plaintiff, as president of the railroad company, made a demand upon the defendant for settlement for bonds sold; and the evidence tended to show that the defendant was then owing the railroad company on account of bonds much more than the amount of the drafts, and that the drafts were given in settlement. *Held* that a general verdict for plaintiff, and a special finding that the drafts were accepted in settlement of a disputed claim made by the railway company, and that defendant had not paid that company the amount due for its bonds, were sufficiently supported by the evidence.

3.  **Corporation:** POWER OF OFFICER TO SETTLE DISPUTED CLAIM. The purchase of bonds and the paying for them were within the ordinary business of defendant. Its treasurer was authorized to make such purchases for defendant, and to make payment. *Held* that he was also authorized to determine the amount unpaid, even to the extent of compromising a dispute in regard to it.

4. **Consideration:** FOR DRAFTS : BURDEN OF PROOF : PLEADING. The drafts sued on import a consideration. (Code, sec. 2113.) It was not, therefore, necessary for plaintiff to plead or prove it in the first instance; and where the answer set up want of consideration, these averments were denied by operation of law, without a reply, and it was competent for plaintiff, under the issues thus raised, to show that the drafts were accepted in compromise of a dispute.

5. **Corporation :** POWER OF TREASURER : EVIDENCE. In an action on drafts accepted on behalf of the defendant by its treasurer, where there was *prima-facie* evidence that the defendant's records gave the treasurer authority to accept the drafts, which record was not disputed, *held* that the testimony of a witness for defendant, that he found nothing of record in the books of defendant to show that the treasurer had such authority, was properly stricken out on motion as being but the conclusion of the witness.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, Judge.

FILED, MAY 29, 1889.

ACTION at law to recover the amount of two drafts drawn on and alleged to have been accepted by defendant. There was a trial by jury, and a verdict and judgment for plaintiff. The defendant appeals.

*Gatch, Connor & Weaver*, for appellant.

*Kauffman & Guernsey*, for appellee.

ROBINSON, J.—On the fourteenth day of January, 1885, the Union Street Railway Company of Burlington drew on the defendant three drafts, for one thousand dollars each, payable to the order of plaintiff. They were accepted on the day of their date in the name of defendant, by its treasurer. One of the drafts was paid, and the others are involved in this action. The defendant claims that the drafts were accepted without authority and without consideration.

I. There were two trials in the court below, the first one resulting in a disagreement of the jury. Before the first trial plaintiff served defendant with notice to produce on the trial of the cause the original record of the meeting of its board of directors held on or about the third day of July, 1882, including the record of a certain resolution giving to its president and treasurer, and to each of them, full power to execute contracts for the payment of money to convey real and personal estate, and to purchase and sell securities. Said notice also informed defendant that, if the original record was not so produced, parol evidence of its contents would be introduced at the trial. The original record was not produced, whereupon one B. L. Harding testified that in the year 1882 he was vice-president, a director and member of the executive committee of defendant, and continued in such position until April, 1885; that the eastern office of defendant was in Boston; that he was frequently in Boston, and present at many meetings of the board of directors, and was well acquainted with their action; that he was familiar with the original record of the resolution named in the notice; and that an exhibit shown him contained a true copy of it. The exhibit was then introduced in evidence, over the objection of defendant. We think it was properly so introduced. Harding's testestimony, on cross-examination, was not entirely satisfactory, it is true, and he stated that he could not write a copy of the resolution from memory alone, but his admitted relations with defendant were such that he would naturally become familiar with the resolution. The exhibit was in the handwriting of the secretary of defendant, and Harding testified positively that it was a copy of the original. Defendant was in possession of the original, and was given ample opportunity to produce it. After it knew that the copy would be offered if the original was not produced, it took the depositions of several of its officers, but made no effort whatever to contradict the alleged copy. Under these circumstances, it may fairly be presumed that the exhibit is as favorable

1. EVIDENCE: secondary: foundation for: notice to produce papers.

to defendant as the original record would be, and whether it was so or not is immaterial. Defendant alone had the power to show the facts, if they·were not as represented in the exhibit, and, having failed to do so, cannot now be heard to complain. It is said the ruling of the court was contrary to the decision in *Beebe v. Association*, 76 Iowa, 129, but that case involved the procuring of a rule for the production of original papers, and is not in point. The question under consideration is the sufficiency of the foundation laid for the introduction of secondary evidence. That evidence of the contents of a book or paper in the possession of the adverse party may be given, if he refuses to produce it after the giving of reasonable and proper notice, is well settled. *Greenough v. Shelden*, 9 Iowa, 506; 1 Greenl. Ev., sec. 560, and note; 2 Phil. Ev. 519.

II. The Union Street Railway Company was organized and incorporated under the laws of Iowa in the month of February, 1884. Soon after its organization was perfected it issued one hundred and twenty-five thousand dollars in bonds, which were sold to defendant at ninty-five cents on the dollar. The defendant was an Iowa corporation, organized to negotiate, purchase, hold and sell bonds, certificates of stock, notes and other evidences of debt, including securities of various kinds. Its principal place of business for the state of Iowa was in Des Moines, but its office for the transaction of business outside that state was located in Boston. Harding was one of the organizers of the street-railway company, and was connected with defendant as already stated. He was also president of the Des Moines, Osceola & Southern Railway Company, which was then engaged in building a railway. That company was being assisted in the sale of its bonds by the defendant, and had overdrawn its account, January 1, 1884, in the sum of about forty-five thousand dollars. The property of the street-railway company cost less than sixty thousand dollars, including extensions and improvements; hence the proceeds of the bonds sold to defendant represented a profit

*2. VERDICT: evidence to support: acceptance of drafts: settlement.*

of nearly sixty thousand dollars. Plaintiff was made president of the street-railway company, and managed its affairs from the time of its organization until the drafts in controversy were accepted. The street-railway bonds were delivered to Harding, when they were executed, and he delivered them to defendant at its Boston office. He drew a portion of the proceeds of the bonds, and sent nearly sixty thousand dollars to plaintiff. It is contended by defendant that Harding received all the proceeds; that he was authorized to receive them; and that when the drafts in suit were given he had been paid in full. Defendant also contends that, if he was not in fact so authorized, yet the officers of the street-railway company knew that he was drawing the money, and made no objection to his so doing. It is claimed by plaintiff that Harding had no right to receive the proceeds of the bonds, and that he did not know that he had received more than the amount sent to plaintiff at Burlington. A young clerk of Harding, employed in his office at Des Moines, was the nominal treasurer of the street-railway company, but never received any of its funds. Harding claims that, while he received from defendant money to the amount of the purchase price of the bonds, yet he returned a large portion of it. Defendant claims that, if any money was so returned, it was designed to be applied on the Osceola Railway Company accounts. After the street-railway company had been organized several months, plaintiff, as its president, sought of defendant an accounting for the bonds, and was informed that the proceeds had been paid to Harding. Plaintiff visited Harding, and was told that the information he had received from the Boston office was not correct. Harding's claim seems to have been confirmed by further correspondence with the Boston office. Plaintiff was not aware that defendant had purchased all the bonds, and was informed that it had sold but fifty-seven thousand dollars' worth. He went to Boston in January, 1885, and insisted on a final accounting. He had received nothing for his services as president, but had finally agreed with the persons interested in the

street-railway company to accept three thousand dollars in settlement of his claim for services. One Smith was the treasurer of defendant, and was also interested in the street-railway company. Defendant refused to account to plaintiff for the bonds it had received, although he then knew it had sold enough to amount to about sixty-three thousand dollars. It was finally agreed that plaintiff should surrender his stock in the street-railway company, that he should resign his office of president, and that he should receive three thousand dollars from defendant in settlement; and the three drafts were drawn and accepted, as already stated, for that purpose. The jury found specially that the drafts were accepted in settlement of a disputed claim made by the street-railway company against defendant, and that at that time defendant had not paid to said company the amount due for its bonds.

Appellant contends at great length and with much ingenuity that the special findings, especially the second one, and the general verdict, are contrary to the evidence, and contrary to the charge of the court; but, in our opinion, it is a case of such conflict of evidence that we cannot say that the conclusion of the jury is unwarranted. It does not appear that Harding was authorized to receive the proceeds of the bonds, and, if he was not, then defendant was owing to the street-railway company much more than three thousand dollars when the drafts in suit were drawn and accepted. It is not disputed that plaintiff was justly entitled to receive three thousand dollars when he received the accepted drafts. He signed a receipt designed to exonerate defendant from further liability on account of the bonds. He states that he explained when he signed it that he intended it to be effectual only for moneys actually paid; but it is not material to inquire into the effect of his intent, nor of the paper which he signed. It is clear that he made a demand of settlement of defendant in good faith; that the demand was not unfounded; that the drafts were given to settle it; and that plaintiff acted as president of the street-railway company in attempting to obtain a settlement.

III.   It is insisted by appellant that, even if the
authority of the treasurer of defendant to make con-
tracts for the payment of money be conceded,
yet such authority would extend only to
transactions in the ordinary course of busi-
ness, and not to the compromise of disputed claims.
But the purchase of bonds, and the paying for them,
were within the ordinary business of defendant, and it
was within the province of the officer who was author-
ized to make the purchase for the defendant, and to
make payment, to determine the amount unpaid, even
to the extent of compromising a dispute in regard to it.

3. CORPORATION: power of officer to settle disputed claim.

IV.   It is claimed that the burden of proof to show
a sufficient consideration for the drafts was upon plain-
tiff, and that there was error in the
admission of evidence to show that they were
accepted in compromise of a claim, because
a compromise was not pleaded.   The drafts in suit import
a consideration.   Code, section 2113.   It was not, there-
fore, necessary for plaintiff to plead it, nor to prove it in
the first instance.   A want of consideration was a matter
of defense, to be pleaded and proven by defendant.
The averments in the answer of want of consideration
were denied by operation of law, and no reply was
required.   It was entirely competent for plaintiff, under
the issues raised by the answer, to show the real con-
sideration of the drafts.

4. CONSIDERATION: for drafts: burden of proof: pleading.

V.   A witness was asked whether the treasurer of
defendant   had any power or authority to accept
the drafts in suit, or either of them.   He
answered:   I do not know.   *I have found
nothing of record in the books of said com-
pany to show that he had such authority.*   The books
and records of the company contain no reference to the
drafts sued upon.   I have no personal knowledge in
regard to the execution of the drafts in suit," etc.   The
italicized portion of the answer was excluded on the
objection of plaintiff.   We think the ruling was correct.
It simply gave the conclusion of the witness as to the
legal effect of what the record contained.   An answer of

5. CORPORATION: power of treasurer: evidence.

that kind might be admissible under some circumstances, but not where, as in this case, there was *prima-facie* evidence that the record did give the authority in question, which record was not disputed. What we have said on this point will dispose of numerous questions presented by appellant, which need not be further considered.

VI. We have examined the record and arguments of counsel in the case, but fail to discover any error prejudicial to appellant. The judgment of the district court is therefore                    AFFIRMED.